OPINION. Arundell, Judge: The principal issue is whether the newly organized Corporation’s promise made in the purchase agreement of January 5, 1948, to pay the two Perrault brothers the amount of $973,088.80 in 4 installments on or before January 2,1951, constituted a bona fide indebtedness of the Corporation as petitioners all contend, or whether the transfer of assets under the agreement of January 5, 1948, together with the almost simultaneous subscriptions by the brothers for all of the capital stock of the Corporation in the amount of $2,000, should in substance be regarded as a transfer of property within section 112 (b) (5)[3] of the 1939 Code, or whether in any event the selling price of the 56 machines was in excess of their fair value and thus not a bona fide indebtedness to the extent of the excess. Dependent upon how the principal issue is decided are three subsidiary issues: (1) Whether the payments made to the Perrault brothers by the Corporation under the January 5, 1948, agreement are payments of proceeds of an installment sale taxable to the extent of gain at capital gains rates as contended for by the recipients, or whether the payments are in substance dividends under section 115 (a)[4] of the 1939 Code as contended for by respondent; (2) whether the amounts accrued as interest by the Corporation on its promises under the January 5, 1948, agreement are deductible as interest under section 23 (b)[5] of the 1939 Code; and (3) whether the basis[6] of the depreciable assets transferred by the two brothers to the Corporation under sections 114 (a), 113 (b), and 113 (a) of the 1939 Code was the price fixed in the purchase agreement as contended for by the Corporation, or is the same as in the hands of the transferor-stockholders under sections 114 (a), 113 (b), and 113 (a) (8) (A) of the 1939 Code, as contended for by respondent. The facts and circumstances emphasized by the respondent as requiring an adjustment of the tax consequences flowing from the so-called purchase agreement are mainly that the ratio of indebtedness to capital was so great as to make the capitalization of the Corporation entirely inadequate unless the assets which in form were sold to the Corporation be considered in substance as an exchange of property for stock; and that the price at which the 56 line-traveling coating and wrapping machines were allegedly sold was excessive. The respondent reasons that if the purchase agreement be taken at its face value then the ratio of indebtedness to capital would be $1,026,-951.32 to $2,000, or a ratio of 1026 to 2, which he, in effect, says is so “terrific” as to demonstrate that what in form is indebtedness should in substance be considered capital. In support of this contention, the respondent cites such cases as Swoby Corporation, 9 T. C. 887; Sam Schmtser, 13 T. C. 43; Isidor Dobkin, 15 T. C. 31; and R. E. Nelson, 19 T. C. 575. See also Houck v. Hinds, 215 F. 2d 673. But we think the respondent has overlooked the fact that in addition to the assets which the Corporation purchased for a total consideration of $1,026,951.32 it also acquired from the partnership for no consideration orders or unbilled items and goodwill having a substantial value to the Corporation of, to wit, several hundred thousand dollars. The petitioners point to the fact that the Corporation realized from the rental contracts which were transferred to it on organization a total of $928,248.73. They also argue that goodwill of over $600,000 passed from the Partnership to the Corporation. We have not thought it necessary to determine the value of each separate asset that passed to the Corporation, but we have no hesitation in determining that they were of large value amounting to several hundred thousand dollars and constituted such an ample investment in the Corporation as to preclude any justification for holding under the thin capitalization doctrine that the transferred assets under the purchase agreement of January 5,1948, should in substance be considered capital rather than a bona fide sale by the stockholders to the Corporation. John Kelley Co. v. Commissioner, 326 U. S. 821; Rowan v. United States, 219 F. 2d 51; Sun Properties, Ins. v. United States, 220 F. 2d 171; Sheldon Tauber, 24 T. C. 179. We hold, therefore, that the transfer of assets under the agreement of January 5, 1948, does not come within the provisions of section 112 (b) (5), supra. So long as the Corporation was provided with adequate capital, as we have held it was, we know of no reason why the organizers of the Corporation could not sell other assets to the Corporation providing the selling price was not out of line with realities. Bullen v. State of Wisconsin, 240 U. S. 625; John Kelley Co. v. Commissioner, supra. This leads us to a consideration of respondent’s contention that the selling price of the 56 machines was in excess of their fair value. He makes the point that the machines had little actual cost to build and that the real item of value which was transferred to the Corporation was the licensing agreement and not the machines. The method used by petitioners in valuing the machines is fully set forth in our findings. The evidence shows that although the machines could not be sold in the United States without Carey’s consent they could be sold abroad at the prices mentioned in the purchase agreement; that competitors of petitioners sold similar machines on the same basis; that the rentals earned by a machine in this country were usually two to five times as large as its sales price abroad; and that in 1948 alone the Corporation reported rentals of $355,982.28 from these machines for which it agreed to pay $473,506. It may be admitted that without the licensing agreement the machines would not have had the value stated in the purchase agreement. But the fact that a portion of the value of the machines arises because there is present a patent monopoly is no reason to reduce the value of the machines as such and attribute the reduction to the patent. The Supreme Court, in Susquehanna Co. v. Tax Comm. (No. 1), 283 U. S. 291, has made it clear that where the value of physical property has been enhanced by reason of the presence of an intangible legal interest, nevertheless the enhanced value still adheres to the property. It is our opinion that the value of the 56 machines in the purchase agreement of January 1948 was not in excess of the fair market value of such machines. It follows that the price the Corporation agreed to pay constitutes a bona fide indebtedness of the Corporation. On the basis of our holding under the principal issue, we think it follows without any further discussion that the three subsidiary issues must be decided in favor of petitioners and we so hold. Decisions will be entered under Rule 60. SEC. 112. RECOGNITION OF GAIN OR LOSS. (b) Exchanges Solely in Kind. ***••*• (5) Transfer to corporation controlled by transferor. — No gain or loss shall be recognized If property Is transferred to a corporation by one or more persons solely in exchange for stock or securities In such corporation, and immediately after the exchange such person or persons are in control of the corporation; but In the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each Is substantially In proportion to his Interest in the property prior to the exchange. SBC. 115. DISTRIBUTION BY CORPORATIONS. (a) Definition of Dividend. — The term “dividend” when used in this chapter * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. SEC. 23. DEDUCTIONS PROM GROSS INCOME. In computing net income there shall be allowed as deductions: ******* (b) Interest. — All interest paid or accrued within the taxable year on indebtedness * * * SEC. 114. BASIS POR DEPRECIATION AND DEPLETION. (a) Basis fob Depreciation. — The basis upon which exhaustion, wear ana tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section 113 (b) for the purpose of determining the gain upon the sale or other disposition of such property. SEC. 113. ADJUSTED BASIS POR DETERMINING GAIN OR LOSS. (a) Basis (Unadjusted) of Propertt. — The basis of property shall be the cost of such property ; except that— ******* (8)1 Property acquired by issuance of stock or as paid-in surplus. — If the property was acquired after December 81, 1920, by a corporation— (A) by the issuance of its stock or securities in connection with a transaction described in section 112 (b) (G) * * *, or (B) as paid-in surplus or as a contribution to capital, then the basis shall be the same as it would be in the hands ,of the transferor * * * * * * * * * * (b) Adjusted Basis. — The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided.